## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **LST GROUP, LLC**, | : | **CASE NO.:** |
| | : | |
| Plaintiff, | : | **JUDGE:** |
| | : | |
| v. | : | **PLAINTIFF'S VERIFIED** |
| | : | **COMPLAINT FOR MONETARY** |
| **STEPHANIE SPATZ**, | : | **DAMAGES, TEMPORARY** |
| | : | **RESTRAINING ORDER, AND** |
| Defendant. | : | **PRELIMINARY AND** |
| | : | **PERMANENT INJUNCTION** |

Plaintiff LST Group, LLC ("LST"), for its Verified Complaint against Defendant Stephanie Spatz ("Defendant"), alleges as follows:

### PARTIES

1.     Plaintiff LST Group, LLC is a limited liability company formed under the laws of Florida with a principal place of business at 203 Avenue A Northwest, Suite 200, Winter Haven, Florida 33881.

2.     Upon information and belief, Defendant is an individual residing in Tampa, Florida.

### JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under federal law, specifically the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, as amended.

4.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

1

199445851v1

5. This Court has personal jurisdiction over Stephanie Spatz because she is a resident of Florida.

6. This Court is the proper venue because Defendant resides in Tampa, which is within the Middle District of Florida, and a substantial part of the events or omissions giving rise to the claims occurred in the Middle District of Florida, including Defendant's employment with LST in Tampa, her solicitation of employees and clients from Tampa, and her ongoing competitive activities from Tampa.

7. Venue is also proper pursuant to the parties' contractual agreement, as the Confidentiality, Non-Solicitation and Non-Compete Agreement ("Agreement") between LST and Defendant provides that the parties irrevocably submit to the exclusive jurisdiction of the United States District Court for the Middle District of Florida located in Tampa, Florida. A true and accurate copy of the Agreement is attached as Exhibit A.

## BACKGROUND

8. LST is a family-owned logistics company with a team of dedicated professionals who have expertise and knowledge of the transportation industry.

9. LST provides freight brokerage services and logistics solutions to clients across North America, Canada, and Mexico.

10. LST's business depends heavily on its relationships with clients, its client lists, pricing information, and other confidential business information.

2

199445851v1

**Defendant's Employment and the Agreement**

11.     On August 27, 2024, LST hired Defendant (then known as Stephanie Peterson) as Tampa Branch Manager.

12.     As a Branch Manager, Defendant was tasked with the development and management of all sales and operations, including market competitiveness, pricing, and channel growth strategies for the branch. She was further tasked with creating profitable growth revenue with current accounts, while soliciting new sources of revenue and profit, and for the development and growth of an inside sales, account management, and carrier sales teams. Her managerial duties included hiring and recommendations for termination.

13.     Because of her position with LST, Defendant was also provided access to LST's trade secret and confidential business information including its customer lists, pricing information, and profit margins.

14.     On August 29, 2024, in conjunction with Defendant's start of employment and to protect LST's legitimate business interests, Defendant executed the Agreement.  (Ex. A).

15.     The Agreement contains comprehensive restrictive covenants designed to protect LST's legitimate business interests, including its trade secrets, confidential business information, substantial relationships with customers, and goodwill.

16.     Section 2.1 of the Agreement requires Defendant to hold all Confidential Information on a confidential, trade secret basis and prohibits

3

Defendant from using, disclosing, reproducing, or permitting access to such information. (*Id.* at § 2.1).

17.    The Agreement defines "Confidential Information" to include non-public information relating to LST's business, including but not limited to trade secrets, client names, client lists, client financial information, rates, prices and pricing lists, operations, and other non-public information concerning the business. (*Id.* at § 1).

18.    Section 2.5(a) of the Agreement prohibits Defendant from soliciting business from any "Client" of LST for a period of one year following the termination of her employment for any reason. (*Id.* at § 2.5).

19.    Section 2.6 of the Agreement defines "Client" to include anyone who is in the process of ordering, purchasing, or leasing services from LST, anyone who purchased or leased services from LST during the two-year period immediately preceding termination, and any prospective client with which LST had made contact regarding services during the one-year period immediately preceding termination of Defendant's employment. (*Id.* at § 2.6).

20.    Section 2.5(d) of the Agreement prohibits Defendant from employing or attempting to employ any person who is or was an employee of LST during the year preceding the termination of Defendant's employment, without LST's prior written consent, for a period of one year following termination of Defendant's employment. (*Id.* at § 2.5(d)).

4

199445851v1

21.     Section 2.5(b) and (e) of the Agreement prohibit Defendant from engaging in competitive activity, including employment with any business competitive to LST's business at any location within the United States, for a period of one year following termination of Defendant's employment. (*Id.* at § 2.5(b) and (e)).

22.     Section 3.2(c) of the Agreement provides for liquidated damages of one hundred thousand dollars ($100,000.00) for each violation of the restrictive covenants. (*Id.* at § 3.2(c)).

23.     Section 3.2(a) of the Agreement provides that LST shall have the right to seek injunctive relief to enforce the restrictive covenants, and Defendant acknowledges that any breach will cause irreparable injury to LST. (*Id.* at § 3.2(a)).

24.     Section 3.3 of the Agreement provides that the prevailing party in any suit to enforce the Agreement shall be entitled to recover attorney's fees and costs. (*Id.* at § 3.3).

25.     Defendant electronically signed the Agreement on August 29, 2024.

26.     On September 2, 2025, LST promoted Defendant to Director of Auto Hauling Division. In that role, Defendant was responsible for managing and developing relationships with LST's clients in the auto hauling division, soliciting new business specifically for the auto division, and creating profitable growth revenue with current accounts.

27.     As Director of Auto Hauling Division, Defendant had access to LST's client lists, client financial information, pricing information, customer

199445851v1

relationships, and other confidential business information constituting trade secrets.

28. Through her position, Defendant developed substantial knowledge of LST's clients, including their shipping needs, pricing expectations, and business relationships with LST.

## Defendant's Breaches of the Agreement While Employed

29. On March 16, 2026, while still employed by LST, Defendant solicited Senior Account Manager Jonel Matos and Osvaldo "Ozzy" Rodriguez to leave LST and join Scout Freight Group, LLC ("Scout Freight"), a direct competitor of LST.

30. Defendant told Matos and Rodriguez that Scout Freight was willing to steal the whole auto team from LST.

31. Defendant offered Matos one hundred thousand dollars plus four percent commissions to make the switch to Scout Freight.

32. Matos declined Defendant's offer.

33. Upon information and belief, on or about March 16, 2026, while still employed by LST, Defendant began improperly steering LST's business to Scout Freight.

34. Defendant did not tender her notice of resignation until March 27, 2026.

35. LST asked Defendant where she planned to work after resigning and she stated that she did not know.

6

36.    However, upon information and belief, Defendant had already accepted employment from Scout Freight and was actively working for Scout Freight during her employment with LST.

37.    Between March 16, 2026 and March 27, 2026, Defendant continued to collect paychecks from LST while simultaneously steering LST's business to Scout Freight and attempting to recruit LST's employees.

38.    For example, on March 23, 2026 (while still employed by LST and even before she provided her resignation), Defendant received a request for a quote from a prospective Bob Moore Ford. That same day, Defendant provided a pricing quote to Bob Moore Ford which the client accepted.

39.    Defendant was apparently already working for Scout Freight as she had been given a Scout Freight email address:

**From:** Shannon Stansbury <Shannon.Stansbury@bobmoore.com>
**Sent:** Monday, March 23, 2026 4:57 PM
**To:** Stephanie Spatz <sspatz@lstgroupllc.com>
**Cc:** Stephanie Spatz <sspatz@scoutfreight.com>; John Tracy <john.tracy@bobmoore.com>
**Subject:** RE: F150s Starke FL

Stephanie,

Can we move forward with this one please. Also, when do you think you will be able to complete the run? The vehicles can cris cross or either set can be picked up first.

**BOB MOORE**

Mr. Shannon Stansbury
Bob Moore Ford Fleet Sales
8948 S I-35 Service Rd
Oklahoma City, OK, 73160
Shannon.stansbury@bobmoore.com

40.    On March 24, 2026, Defendant completed a "New Customer Onboarding – Customer Credit Application" for Bob Moore Ford *on behalf of Scout Freight*. A true and accurate copy of that document is attached as Exhibit B.

7

41.    LST then became aware that there was a significant drop in sales to LST's clients assigned to Defendant.  On March 30, 2026, LST's Senior Vice President stated that he "strongly suspect[s] that you are already steering business elsewhere" and immediately terminated Defendant's employment

42.    When LST confronted Defendant about siphoning business from LST to a potential competitor, Defendant did not deny doing so.

43.    Following her termination, LST discovered that Defendant had systematically and suspiciously deleted numerous emails from her company email account prior to her departure, suggesting an intentional effort to conceal her communications and activities.

44.    LST's IT department was able to recover many of the deleted emails through LST's email servers and backup systems, revealing the scope of Defendant's attempts to cover her tracks.

45.    The recovered emails revealed that Defendant had sent multiple messages from her company email account to her personal email address containing LST's confidential and proprietary pricing information for specific customers.

46.    On March 25, 2026 (two days before tending her resignation), Defendant sent from her LST work email to her personal email google spreadsheets that contained confidential information for several of LST's largest customers:

8

From: Stephanie Spatz
Sent: Wednesday, March 25, 2026 6:31 PM
To: stephanie Peterson <snspatz@gmail.com>
Subject:

https://docs.google.com/spreadsheets/d/1eELJgHCW9GIKqO9w4g_4Sh6YZOHzC38kq2BPX4t6_n8/edit?usp=sharing

**Stephanie Spatz**
Director of Auto Hauling Division

**LST** Group, LLC
Logistics, Solutions, & Technology
Winter Haven, FL 33881
Cell: (813) 947-0047

From: Stephanie Spatz
Sent: Wednesday, March 25, 2026 6:30 PM
To: stephanie Peterson <snspatz@gmail.com>
Subject:

https://docs.google.com/spreadsheets/d/1S0wkamtJN1RLE6rlCaRptq7pz_JKT8EsqIviYgKhQm0/edit?usp=sharing

**Stephanie Spatz**
Director of Auto Hauling Division

**LST** Group, LLC
Logistics, Solutions, & Technology
Winter Haven, FL 33881
Cell: (813) 947-0047

47.     The spreadsheets, which are not attached here to protect LST's trade secrets, includes the pick up location, the delivery location, the vehicle type, the delivery date, and the price rate for ***every single load*** for those two specific clients.

48.     Defendant deleted the above emails from her sent box in an attempt conceal her theft of LST information and did not seek permission from LST to take the documents.

49.     Upon information and belief, Defendant used the pricing information she stole to solicit LST's customers.

9

199445851v1

50.     LST's customer specific pricing information is not made known to the public, provides LST with a competitive advantage, and is a trade secret.

51.     Defendant's deliberate deletion of sent emails messages after she transmitted LST's confidential information to her personal accounts demonstrates that she was conscious of her wrongdoing and reveals the intentional and malicious nature of her conduct.

### Defendant's Post-Termination Breaches of the Agreement

52.     Scout Freight is a direct competitor of LST, providing freight brokerage and logistics solutions.

53.     Upon information and belief, Scout Freight is headquartered in Dalton, Georgia, and has an office in Chattanooga, Tennessee.

54.     Upon information and belief, Defendant is working for Scout Freight remotely from Tampa, Florida.

55.     After her termination on March 30, 2026, Defendant continued to solicit LST's clients on behalf of Scout Freight.

56.     Upon information and belief, Defendant used Plaintiff's confidential and trade secret pricing information and client list to solicit LST's customers on behalf of Scout Freight.

57.     LST was contacted by one such client who confirmed that Defendant was contacting them in her new role at Scout Freight.

58.     On April 2, 2026, Plaintiff discovered from another one of its clients that Scout Freight was attempting to solicit work through Defendant.

10

199445851v1

59. Upon information and belief, Defendant has used and continues to use her knowledge of LST's client relationships, client lists, and pricing information to enable Scout Freight to unfairly compete against LST.

### LST's Lost Business

60. The frequency of loads from clients for which LST routinely performed work and Defendant managed during her employment with LST has diminished drastically since Defendant started redirecting business from LST to Scout Freight.

61. The loss of these major clients has caused LST to suffer significant damage to its business reputation, harm to its customer goodwill, and lost profits.

62. Upon information and belief, these clients have moved their business to Scout Freight as a result of Defendant's unlawful solicitation.

63. The extent of Defendant's solicitation of LST's clients is not fully known and will be developed through discovery.

### COUNT I
### BREACH OF AGREEMENT (NON-SOLICITATION OF EMPLOYEES)

64. LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

65. LST entered into a valid and enforceable Agreement with Defendant.

66. On August 29, 2024, Defendant electronically signed the Agreement, agreeing to be bound by its terms.

199445851v1

67. The Agreement is supported by adequate consideration, including Defendant's continued at-will employment with LST and the other good and valuable consideration described in the Agreement.

68. Section 2.5(d) of the Agreement expressly prohibits Defendant from employing or attempting to employ any person who is or was an employee of LST during the preceding year, without LST's prior written consent.

69. This prohibition applies during Defendant's employment and for a period of one year following termination of her employment.

70. During the restricted period, Defendant solicited at least two LST employees and stated that Scout Freight was willing to solicit the entire LST auto team.

71. LST has suffered and continues to suffer harm from Defendant's breach of the employee non-solicitation covenant.

72. As a result of Defendant's breach of the Agreement's employee non-solicitation provision, and unless Defendant is enjoined from continuing such conduct, LST has suffered and will continue to suffer irreparable and incalculable harm for which it can never be compensated.  No adequate remedy at law exists for such a breach.

73. As a direct and proximate result of Defendant's breaches of contract, LST has also suffered substantial monetary damages which will be established at trial.

74. Under the Agreement, and as a direct and proximate result of Defendant's breaches of contract, LST is entitled to recovery of its attorneys' fees and costs.

## COUNT II
## BREACH OF AGREEMENT (NON-SOLICITATION OF CLIENTS)

75. LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

76. LST entered into a valid and enforceable Agreement with Defendant.

77. On August 29, 2024, Defendant electronically signed the Agreement, agreeing to be bound by its terms.

78. Section 2.5(a) of the Agreement expressly prohibits Defendant from soliciting business from any client of LST for a period of one year following termination of Defendant's employment.

79. Upon information and belief, while still employed by LST, Defendant solicited LST's clients by diverting them to Scout Freight.

80. After her termination on March 30, 2026, Defendant solicited LST's clients on behalf of Scout Freight.

81. The clients that Defendant has (and will continue to) solicit all purchased services from LST during the two-year period immediately preceding Defendant's termination on March 30, 2026.

82. These clients therefore fall within the definition of "Client" under Section 2.6 of the Agreement.

13

199445851v1

83.     Upon information and belief, Defendant used her knowledge of LST's client relationships to enable Scout Freight to bid on loads from LST's clients.

84.     LST has suffered substantial lost revenue and lost profits as a result of losing these clients.

85.     Upon information and belief, these clients have moved their business to Scout Freight as a result of Defendant's solicitation.

86.     As a result of Defendant's breach of the Agreement's client non-solicitation provision, and unless Defendant is enjoined from continuing such conduct, LST has suffered and will continue to suffer irreparable and incalculable harm for which it can never be compensated.  No adequate remedy at law exists for such a breach.

87.     As a direct and proximate result of Defendant's breaches of contract, LST has also suffered substantial monetary damages which will be established at trial.

88.     Under the Agreement, and as a direct and proximate result of Defendant's breaches of contract, LST is entitled to recovery of its attorneys' fees and costs.

**COUNT III**
**<u>BREACH OF AGREEMENT (NON-COMPETE)</u>**

89.     LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

90.     LST entered into a valid and enforceable Agreement with Defendant.

14

91.    Section 2.5(b) of the Agreement prohibits Defendant from engaging in the promotion, sale, or lease of any product, process, or service that competes with any product, process, or service promoted, sold, or leased by LST during the term of Defendant's employment.

92.    Section 2.5(e) of the Agreement prohibits Defendant from owning, managing, operating, or being employed by any business engaged in any business that is competitive to the business of LST at any location within the United States.

93.    These prohibitions apply for a period of one year following termination of employment.

94.    Upon information and belief, on or about March 16, 2025, while still employed by LST, Defendant began competing with LST in violation of the Agreement by diverting LST's business to Scout Freight.

95.    Scout Freight is a direct competitor of LST, providing freight brokerage and logistics solutions.

96.    Upon information and belief, Defendant continued her employment with Scout Freight after her termination from LST on March 30, 2026.

97.     Upon information and belief, Defendant is currently working for Scout Freight remotely from Tampa, Florida.

98.    As a result of Defendant's competitive employment with Scout Freight, LST has lost business to Scout Freight.

99.    LST has suffered substantial lost revenue and lost profits as a result of Defendant's competitive activity.

15

100. Plaintiff's competitive position has been diminished as a result of Defendant's breach.

101. As a result of Defendant's breach of the Agreement's non-competition provision, and unless Defendant is enjoined from continuing such conduct, LST has suffered and will continue to suffer irreparable and incalculable harm for which it can never be compensated.  No adequate remedy at law exists for such a breach.

102. As a direct and proximate result of Defendant's breaches of contract, LST has also suffered substantial monetary damages which will be established at trial.

103. Under the Agreement, and as a direct and proximate result of Defendant's breaches of contract, LST is entitled to recovery of its attorneys' fees and costs.

## COUNT IV
## BREACH OF AGREEMENT (CONFIDENTIALITY)

104. LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

105. LST entered into a valid and enforceable Agreement with Defendant.

106. Section 2.1 of the Agreement requires Defendant to hold all Confidential Information on a confidential, trade secret basis.

107. Section 2.1 prohibits Defendant from using, disclosing, reproducing, or permitting access to Confidential Information.

199445851v1

108.    The Agreement defines Confidential Information to include client names, client lists, client financial information, pricing information, strategies, and other non-public business information.

109.    LST's client list, customer relationships, and pricing information are not generally known to the public or to LST's competitors.

110.    This information derives independent economic value from not being generally known.

111.    LST has taken reasonable efforts to maintain the secrecy of this information.

112.    As Director of Auto Hauling Division, Defendant had access to LST's client list, customer relationships, pricing information, and business strategies.

113.    Defendant was entrusted with this information as part of her employment duties.

114.    Upon information and belief, Defendant used LST's confidential client list to identify and contact LST's customers on behalf of Scout Freight.

115.    As a direct result of Defendant's use of LST's confidential information, LST has suffered substantial lost revenue and lost profits.

116.    As a result of Defendant's breach of the Agreement's confidentiality provision, and unless Defendant is enjoined from continuing such conduct, LST has suffered and will continue to suffer irreparable and incalculable harm for which it can never be compensated.  No adequate remedy at law exists for such a breach.

17

199445851v1

117.    As a direct and proximate result of Defendant's breaches of contract, LST has also suffered substantial monetary damages which will be established at trial.

118.    Under the Agreement, and as a direct and proximate result of Defendant's breaches of contract, LST is entitled to recovery of its attorneys' fees and costs.

## COUNT V
## VIOLATION OF DEFEND TRADE SECRETS ACT OF 2016

119.    LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

120.    LST has developed and owns valuable trade secrets related to its services, including but not limited to its client list, customer relationships, and pricing information.

121.    The trade secrets are used in, or intended for use in, interstate or foreign commerce.

122.    LST's trade secrets have value because they are not generally known to the public and are not readily ascertainable.

123.    LST has taken reasonable measures to safeguard its trade secrets, including the use of restrictive covenant agreements, granting and monitoring limited access to its trade secrets on a need to know basis, providing employees with password protected electronic devices, and using password protection to access its trade secrets on proprietary databases through LST's VPN that requires

18

199445851v1

double verification.

124. Defendant sent electronic data containing LST's trade secret and confidential information from her LST email to her personal email days before she planned to resign without a legitimate purpose.

125. Defendant used improper means to acquire and use LST's trade secrets by accessing and downloading LST's information without a lawful purpose after she planned to leave LST and compete against it through Scout Freight.

126. Defendant has obtained an economic benefit from the misappropriation of LST's trade secrets.

127. Defendant's misappropriation was willful and malicious.

128. As a result of Defendant's unlawful actions, LST has suffered harm, including: (1) the loss of its confidential and proprietary information, including the lost value derived from LST's investment in a large amount of time and resources to develop the confidential information that gives LST an advantage over its competitors; (2) lost business from customers that are now serviced by Scout Freight; and (3) damage to goodwill and reputation.

129. As a result of Defendant's willful and malicious misappropriation of LST's trade secrets, LST is entitled to recover actual damages from the harm Defendant has caused and continue to cause, exemplary damages, and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(B).

130. As a result of Defendant's willful and malicious misappropriation of LST's trade secrets, pursuant to 18 U.S.C. § 1836(b)(3)(A), LST is entitled to a

19

permanent injunction enjoining Defendant from engaging in any further actual or threatened misappropriation of LST's trade secrets and from disclosing them to anyone other than an employee or representative of LST.

## COUNT VI
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF FLA. STAT. § 688.001, ET SEQ.

131. LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

132. Before leaving LST, Defendant accessed and took confidential and proprietary information from LST, including but not limited to its client list, customer relationships, and pricing information.

133. LST took reasonable steps to keep this confidential and proprietary information confidential and secret, such as making employees (including Defendant) sign agreements acknowledging that all such information is to remain confidential.

134. LST's confidential and proprietary information is not generally known to the public and is not readily ascertainable through proper means.

135. LST's confidential and proprietary information derives independent economic value because it is not generally known, LST has undergone significant expense, time, and effort in acquiring this information, and it is confidential to LST.

199445851v1

136. LST's confidential and proprietary information, including the information accessed and taken by Defendant, constitutes trade secrets under Fla. Stat. § 688.002(4).

137. Defendant, without authorization, misappropriated LST's trade secrets as defined in Fla. Stat. § 688.002(2) by acquiring, retaining, and using those trade secrets through improper means and for her own benefit or for the benefit of a competitor, including by copying and removing LST's trade secrets from its systems and retaining them after termination of her employment.

138. Defendant was and is required to return all trade secrets to which she had access during her employment, upon the termination of her employment, as stated in the Agreement.  By accessing and taking the trade secrets for personal use, Defendant acquired the trade secrets without LST's consent and by improper means.

139. Defendant is still in possession of LST's files referenced above, which, upon information and belief, Defendant has used to compete with LST.

140. As a direct and proximate result of Defendant's misappropriation of LST's trade secrets, LST has suffered and continues to suffer irreparable harm and substantial damages, including loss of the value of its trade secrets and the potential competitive advantage conferred on others through the unauthorized use or disclosure of LST's trade secrets.

141.    LST has suffered monetary damages as a result of Defendant's actions and will continue to suffer such damages so long as Defendant's conduct is allowed to continue.

142.    Defendant's conduct was willful and malicious, entitling LST to an award of exemplary damages pursuant to Fla. Stat. § 688.004(2).

143.    As a result of Defendant's willful and malicious misappropriation of LST's trade secrets, LST is entitled to a permanent injunction enjoining Defendant from engaging in any further actual or threatened misappropriation of LST's trade secrets and from disclosing them to anyone other than an employee or representative of LST.

**COUNT VII**
**<u>BREACH OF DUTY OF LOYALTY</u>**

144.    LST repeats and realleges the allegations set forth in all preceding paragraphs as if fully rewritten here.

145.    As an employee of LST, Defendant had a duty of loyalty to act in the best interests of LST.

146.    Defendant breached that duty when she stole information belonging to LST while employed by LST to assist a competitor, and began redirecting clients to LST while employed by LST.

147.    As a result of Defendant's breach, LST has suffered monetary damages in an amount to be proven at trial.

199445851v1

148. In addition, Defendant's breach of her duty of loyalty was willful and malicious entitling LST to punitive damages and attorney's fees.

**WHEREFORE**, LST respectfully requests that the Court:

1. A temporary restraining order, preliminary injunction, and permanent injunction retraining and enjoining Defendant, her agents, and all other persons acting in concert with her from soliciting any of LST's current or prospective clients, employees, and contractors, and from further breaching the Agreement;

2. A temporary restraining order, preliminary injunction, and permanent injunction retraining and enjoining Defendant, her agents, and all other persons acting in concert with her from unfairly competing against LST in violation of the noncompetition and non-solicitation restrictive covenants;

3. A temporary restraining order, preliminary injunction, and permanent injunction retraining and enjoining Defendant from using, disclosing, or sharing any of LST's confidential or trade secret information, and to return such information to LST and then permanently purge such information;

4. Award compensatory damages against Defendant in the amount of all actual damages that LST is determined at the trial of this action to have sustained, together with pre-judgment interest;

5. Award punitive damages;

6. Award LST attorneys' fees and other litigation costs and expenses;

7. Award exemplary damages pursuant to Fla. Stat. § 688.004(2).

199445851v1

8.　　Award attorneys' fees and exemplary damages pursuant to 18 U.S.C. § 1836(3)(B).

9.　　Grant the injunctive relief described above and such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Eric Gaum*

Eric Gaum (Fl. Bar No. 1058976)
Taft Stettinius & Hollister LLP
9130 Galleria Court
Suite 101
Naples, FL 34109
Tel: (216) 706-3871
Fax: (216) 241-3707
egaum@taftlaw.com

George B. Musekamp (PHV forthcoming)
Evan H. Cohn (PHV forthcoming)
Taft Stettinius & Hollister LLP
301 E. Fourth Street, Suite 2800
Cincinnati, Ohio 45202
Tel: (513) 381-2838
Fax: (513) 381-0205
gmuskeamp@taftlaw.com
ecohn@taftlaw.com

*Counsel for Plaintiff LST Group, LLC*

24

E.B. Peebles

## VERIFICATION

I, E.B. Peebles , being first duly cautioned and sworn, hereby depose and state upon personal knowledge that the factual allegations contained in the foregoing Verified Complaint for Monetary Damages, Temporary Restraining Order, and Preliminary and Permanent Injunctive Relief ("Complaint") are true and correct to the best of my knowledge, information and belief. Where the allegations in the Complaint are made upon information and belief, I am informed of the information contained in such allegations and believe such information to be true. The documents attached to the Complaint are true and correct copies of those documents as described in the Complaint.

E.B. Peebles

Peebles VP
E.B. Peebles

Subscribed and sworn by _____ before me, a Notary Public, on this 8th day of April, 2026.

VIVEK PATEL
NOTARY
EXPIRES
GEORGIA
07/11/2029
PUBLIC
GWINNETT COUNTY

Notary    Vivek Patel

22

199445851v1